IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT SCOTT PHILPOTT                                                    PLAINTIFF

      v.                              Civil No. 08- 2004

THE UNITED STATES OF AMERICA;
FEDERAL BUREAU OF INVESTIGATION (FBI);
FBI AGENT ED GRAY; THE CITY OF FORT
SMITH; THE FORT SMITH POLICE
DEPARTMENT; WAYNE BARNETT, Fort Smith
Police Department; DOMINIC DAVID,
Fort Smith Police Department; OFFICER
ROGERS, Fort Smith Police Department;
SGT. STRAYBARRY, Fort Smith Police
Department; and CAPTAIN HANEY, Fort
Smith Police Department                                                  DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Robert Scott Philpott filed this civil rights action pursuant to 42 U.S.C. § 1983.  He

proceeds *pro se* and *in forma pauperis*.  The case is before the undersigned for a determination of

whether service of process should issue.

## Background

The complaint in this case is verbose and difficult to follow.  It consists of forty-five pages.

Plaintiff also filed a supplement to his complaint on January 28, 2008 (Doc. 4), and an amended

complaint.  For purposes of discussion, we will attempt to briefly summarize the allegations made

by the plaintiff.

According to the allegations of the complaint and amended complaint, without his

knowledge or consent, an illegal "pen register or trap and trace device" was put in his ear.  Philpott

maintains this was done without proper orders having been obtained.  Between March 2003 and

-1-

May of 2003, Philpott alleges an officer or agent, described as a white female with a small frame, approximately 5'9" tall and having long brownish red hair, went to the residence where Philpott was living and left three pair of earrings with the pen register devices on them. Philpott alleges this is how the six devices were installed on his person.

In September of 2006, Philpott states he went to the county fair with a woman named Courtney. Philpott indicates her voice was recorded through the device and later played back screaming the words "help me." When this was done, it caused him to run up and down the street looking for her.

While he was with April Sanders, Philpott states the sounds of gunshots were played through the devices causing him to think he was getting shot at and making him fear for his life. It also made him think he was being set up by his friends.

In November and December of 2006, Philpott alleges he was introduced to Donna Nash, John Thomas, Courtney's Mother, Mallisa, and Nash's Uncle, Rodney. There was carpet in the bed of Rodney's truck. Seeing this, Philpott alleges the officers or agents recorded all the voices of the people he had met and made it sound and look like a murder had been committed.

On January 18, 2007, Philpott contends Courtney gave him a silver hoop earring. Later that night, Philpott alleges the officers or agents used the devices to make it sound like somebody was outside "talking bad" about him. Philpott maintains this caused him to think someone was outside trying to fight him. Philpott states he could not sleep and kept looking out the window.

He maintains he has "continually been spoken to through this telephonic communication since January 25, 2006." He asserts that this violates the statutory authorization for such devices, Ark. Code Ann. § 5-60-120 and 18 U.S.C. §§ 3122-3127. Philpott maintains these devices cannot be used for a period exceeding sixty days.

-2-

On January 20, 2007, Philpott went to Wal-Mart with Kevin Witicer to buy some cross earring. Each took one earring. Philpott maintains the devices were used to record the voices of Kevin Witicer's aunt and parents to make Philpott think they were outside his Mother's house talking about him. The following morning, Philpott maintains "gun shots were let off through the devices causing him to break down crying thinking some of the children in his neighborhood was being shot at."

On January 28th, Philpott states he, Danna Nash, and Nathan were at the Regency Motel visiting the maintenance man and his wife. Philpott saw various officers and agents there in a room three doors down from the maintenance man's room. Philpott who knew that a drug bust was going to occur went back to the maintenance man's room and "bummed" marked money from the woman. He then went into the woods across the street from the hotel. He alleges the officers or agents made barking sounds through the devise.

Philpott hid in the woods all night. Philpott states he was cold and it snowed.

The following morning, in front of the Relax Inn, Philpott waved down a squad car and got a ride to Wal-Mart. At Wal-Mart, Philpott states he was followed by officers or agents waiting for him to call for a ride. They were hoping they might find drugs in the car. Philpott alleges Rogers, an off duty Fort Smith Police Officer was also at Wal-Mart. Philpott indicates he called for a taxi and was picked up by Wayne Barnett, in taxi #35.

Philpott alleges he was followed by members of the investigation team in a white suburban and in a United Parcel Service (UPS) truck. At Movie Town in Van Buren with his brother and sister, Tina and Michael Bowlin, Philpott states the UPS truck and Barnett were following him.

AO72A
(Rev. 8/82)

Philpott stayed at the Bowlin residence for a period of time.  During this time, Philpott alleges the officers or agents "played games with him using his family's voices through the pen register or trap & trace device."

On February 13th, Philpott states he walked to a laundry mat and called his friends Manda and Autem.  He went to the Pacola Casino with them.  Philpott alleges he was followed by Barnett and other officers and agents.  He states he later found out that Aerial Jones had overdosed on methamphetamine and ecstasy.

On February 14th, Philpott alleges the April Sanders Lechner and her brother Jessie Ray Sanders agreed to set him up for selling drugs.  According to Philpott, the investigation team threatened to bring criminal charges against Lechner unless she agreed to make a controlled buy from Philpott.

On February 15th, Philpott alleges the officers or agents used the devices to play off his emotions about Aerial Jones causing him to break down crying.  On February 16th, Philpott alleges Officer Rogers followed him around in a white truck.  Philpott maintains the officers or agents used his cousins' voices through the devices to act like his cousins were setting him up.

On February 18th, Philpott was at Robin McCollum's house and later that day McCollum was arrested.  That night, Philpott states the officers or agents acted like they were investigating the murder of Jessie Adams.  However, the following day Jessie Adams was at his Mother's house.

On February 20th, Philpott contends he woke up with a recording playing in his ear.  He maintains the officers or agents had turned "all six devices on."  He called the Fort Smith Police Department for help.  Instead he was taken to jail by Officer Dominic David and given no help.  Philpott alleges he was taken to the Sebastian County Adult Detention Center although the police knew he had illegal pen register devices stuck on him.

-4-

Philpott was convicted of an unspecified time and sent to the Arkansas Department of Correction. While there he states he continued to be tortured by voices from the devices.

On a variety of dates, Philpott alleges the devices have been used to communicate various messages to him, to make him think he was crazy, or to put pictures of "baby rape" and child molestations in his head. He maintains he is constantly tortured by voices from the devices and that he is being sent an "electromagnetic pulse to his brain occipital lobe utilizing the molecules to form a electromagnectic picture creating a photo graphic picture in the brain that can either be sent or pulled from both extensions of the device with the same technology generally used by cellular telephones."

As relief, Philpott asks for $50,000,000 in damages. He also asks that everyone who has been arrested because of information obtained through the pen register be released with all charges dropped from 2003 through 2008. He asks that all records from the pen registers on him be looked through and destroyed. He asks that the devices be removed.

## Discussion

Philpott's claims are subject to dismissal. First, to the extent Philpott's complaint can be read to challenge his underlying convictions, those claims would be barred by the Supreme Court's ruling in *Heck.* In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Philpott has made no such showing.

-5-

Second, because Philpott has named the United States, the Federal Bureau of Investigation (FBI), and FBI agent Ed Gray as defendants, we construe Philpott to be attempting to bring claims under *Bivens*.  In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the United States Supreme Court allowed a plaintiff to seek money damages from federal officials for alleged violations of rights secured by the Constitution and laws of the United States.  "An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Christian v. Crawford,* 907 F.2d 808, 810 (8th Cir. 1990).

While a *Bivens* claim allows a plaintiff to seek redress against federal actors for civil rights violations, the Supreme Court has held that a plaintiff has no *Bivens* cause of action against federal agencies, the United States, or public officials acting in their official capacities. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486, 114 S. Ct. 996, 1006, 127 L. Ed. 2d 308 (1994).  Philpott, therefore, has no *Bivens* action against the United States, the FBI, or Agent Gray in his official capacity.

Third, the factual allegations contained in the complaint are irrational, incomprehensible, and clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325-328, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)(clearly baseless allegations are those that are fantastic, fanciful, or delusional.).

Fourth, this complaint is subject to dismissal on *res judicata* grounds.  Philpott filed a prior civil action based on the same claims, *Philpott v. Barnett, et al,* Civil No. 07-2074.  While a dismissal under 28 U.S.C. § 1915(d) "does not bar future litigation over the merits of a paid complaint making the same allegations as the dismissed complaint, a § 1915(d) dismissal has res

-6-

judicata effect 'on frivolousness determinations for future *in forma pauperis* petitions.'" *Waller v. Groose*, 38 F.3d 1007, 1008 (8th Cir. 1994). Accordingly, the dismissal of 07-2074 has res judicata effect and establishes that this claim is frivolous for § 1915(d) purposes. *Id.*

### Conclusion

I therefore recommend that this case be dismissed on the grounds the claims asserted are frivolous, fail to state claims upon which relief can be granted, and the defendants are immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii)(IFP action, or any portion thereof, may be dismissed on such grounds at any time).

**Philpott has ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Philpott is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of May 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-7-

AO72A
(Rev. 8/82)